UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| FREDDIE BURRUS, *et al.*, <br>     Plaintiffs, <br><br> vs. <br><br> STATE LOTTERY COMMISSION OF <br> INDIANA, d/b/a THE HOOSIER <br> LOTTERY, <br>     Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | 1:05-cv-1263-SEB-JMS |

**ENTRY DENYING DEFENDANT'S MOTION TO DISMISS**

This cause comes before the Court on the Motion to Dismiss [Docket No. 65] filed by Defendant, the State Lottery Commission of Indiana d/b/a The Hoosier Lottery ("the Lottery"), pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiffs – eight former employees of the Lottery, each of whom is African-American – brought this suit claiming that the Lottery illegally discriminated against each of them by terminating each Plaintiff's employment on the basis of his or her race. In its Motion to Dismiss, the Lottery seeks to dismiss those of Plaintiffs' claims which are premised on the Lottery's asserted violation of 42 U.S.C. § 1981, on the basis that such claims are barred by the Lottery's sovereign immunity, pursuant to the Eleventh Amendment, and that this court accordingly lacks subject matter jurisdiction over such claims. For the reasons detailed in this entry, we <u>DENY</u> the Lottery's Motion.

## Factual Background

The plaintiffs – six of whom had been employed by the Lottery since 1989, and two of whom had commenced employment in 1997 – were all terminated between January and August of 2005.  Plaintiffs assert that each of them was meeting the Lottery's legitimate performance expectations, and that each was unlawfully terminated on the basis of his or her race.  Plaintiffs filed their combined Complaint in this cause on August 24, 2005 (thereafter amended on February 2, 2006).  Plaintiffs' First Amended Complaint asserts claims of race discrimination, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Count I), as well as 42 U.S.C. § 1981 (Count II).  In its Motion to Dismiss, filed on November 15, 2007, the Lottery seeks dismissal of Count II only.

## Legal Analysis

### I.     Standard of Review

A motion to dismiss for lack of subject matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1).  When ruling upon such a motion, "a district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." St. John's United Church of Christ v. City of Chicago, 502 F.3d 616, 625 (7th Cir. Sept. 13, 2007) (quoting Long v. Shorebank Dev. Corp., 182 F.3d 548, 554 (7th Cir. 1999)).  Dismissal is proper only if the plaintiff cannot establish any set of facts that would legally entitle him or her to the relief sought.  Baker v. Indiana Family &

Soc. Servs. Admin., 260 F.Supp.2d 731, 734 (S.D. Ind. 2003) (Barker, J.).

## II.     Whether the Lottery is Entitled to Eleventh Amendment Immunity

### A.     *State Agency Immunity Under The Eleventh Amendment*

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. Amend. XI. Practically speaking, the Amendment operates generally as a bar to actions in federal court against states, state agencies, or state officials acting in their official capacities. See Peirick v. Indiana University-Purdue University Indianapolis Athletics, __ F.3d __, 2007 WL 4355360, at *12 (7th Cir. Dec. 14, 2007); Kroll v. Bd. of Trustees of Univ. of Ill., 934 F.2d 904, 907 (7th Cir. 1991) ("[A] state agency *is* the state for purposes of the eleventh amendment."); Dean v. Indiana Family and Soc. Servs. Admin., 2007 WL 3119695, at *1 (N.D. Ind. Oct 23, 2007). Though Congress may validly abrogate the states' sovereign immunity, it has not done so with respect to Section 1981.[1] Baker, 260 F.Supp.2d at 737; Will v. Mich. Dept. of State

---

[1] We note that Congress *has* validly abrogated the states' Eleventh Amendment immunity to Title VII claims, at least insofar as the states operate in their capacity as employers. See Noesen v. Medical Staffing Network, Inc., 232 Fed. Appx. 581, 585 (7th Cir. May 2, 2007).

Additionally, Plaintiffs raise an argument that state agencies should *not* be entitled to invoke Eleventh Amendment immunity to Section 1981 claims. Plaintiffs acknowledge that the controlling caselaw firmly contradicts their position, and state that they make the argument merely to avoid waiver and to urge reconsideration of the issue both here and, if necessary, on appeal. Pls.' Resp. at 11. We decline Plaintiffs' invitation to reassess this established rule. See Baker, 260 F.Supp.2d at 737 ("Well-settled case law makes it clear that Congress has not

(continued...)

Police, 491 U.S. 58, 66 (1989). Accordingly, a state agency may assert its Eleventh Amendment sovereign immunity to any private Section 1981 claim brought against it in federal court. The Lottery attempts to invoke such immunity here. Plaintiffs dispute the Lottery's self-characterization as a "state agency," and argue that the Lottery is an independent entity not entitled to assert sovereign immunity.

In determining whether a statutorily-created entity is a "state agency" for immunity purposes, courts consider two factors: "(1) the extent of the entity's financial autonomy from the state and (2) its general legal status." DeHarder Inv. Corp. v. Indiana Hous. Fin. Auth., 909 F. Supp. 606, 611 (S.D. Ind. 1995) (Barker, C.J.); see also Kashani v. Purdue Univ., 813 F.2d 843, 845-47 (7th Cir. 1987). The extent of the entity's financial autonomy from the state is the most important factor. DeHarder, 909 F. Supp. at 611; Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 48 (1994) (recognizing "the vulnerability of the State's purse as the most salient factor in Eleventh Amendment determinations"). In weighing an entity's degree of financial autonomy, we consider five sub-factors: "(1) the extent of state funding; (2) the state's oversight and control of the entity's fiscal affairs; (3) the entity's ability to raise funds; (4) whether the entity is subject to state taxation; and (5) whether a judgment against the entity would result in an increase in its appropriations." Peirick, 2007 WL 4355360, at *13.

---

[1](...continued)
abrogated state sovereign immunity with respect to [Section 1981].").

### B. *Whether the Lottery Qualifies as a State Agency*

Article 30 of the Indiana Code, which creates and regulates the Lottery, states that "it is the intent of the general assembly . . . [t]hat the lottery games be operated as a self-supporting revenue raising operation." Ind. Code § 4-30-1-2(3). The purpose of the lottery is to "enable the people of Indiana to benefit from significant additional money for capital improvements," and the Lottery is directed by statute to "operate the lottery to maximize revenues in a manner consistent with the dignity of the state and the welfare of its citizens." Ind. Code §§ 4-30-1-1, 4-30-5-3. The Lottery is overseen by five commission members appointed by the governor. Ind. Code § 4-30-4-1. Importantly, the statute creating the Lottery deems it "a body politic and corporate *separate from the state* [which] should function as much as possible as an entrepreneurial business enterprise." Ind. Code § 4-30-3-1 (emphasis added).

The Lottery was originally funded by an $18 million appropriation to cover "initial expenses"; this money was to be repaid with interest to the state general fund before any transfer of earnings was made to the Build Indiana fund. Pub. Law 341-1989(ss) § 18. Since its inception, the Lottery has been financially self-supporting; it operates financially by means of an administrative trust fund which is overseen entirely by the Lottery commission. All money received by the Lottery is deposited in the fund, and the money in the fund is "continually appropriated to the [Lottery] commission" by the state. Ind. Code § 4-30-15-1. The Lottery uses the money in its administrative trust fund to pay

prizes[2] and its (broadly defined) expenses, including "all costs incurred in the operation and administration of the lottery" – such as retailer compensation, advertising, supplies, security, independent audits, and costs related to contracts for the purchase or lease of goods and services required by the Lottery. Ind. Code § 4-30-16-1.

All surplus revenue in the administrative fund is distributed as follows. At least quarterly, the Lottery is required to transfer to the treasurer of Indiana $7.5 million for deposit in the Indiana state teachers' retirement fund, $7.5 million for deposit in the pension relief fund, and all remaining surplus revenue to the Build Indiana fund, which funds state and local capital projects. The Lottery may make these transfers on a more frequent basis, if it so chooses (though the number of transfers does not affect the amount required to be transferred). Ind. Code §§ 4-30-16-1, -3.

The Lottery may advertise, conduct market research, and conduct promotions as it may decide. It may purchase insurance and own, sell, or lease real and personal property. It may own copyrights, trademarks, and service marks, and may enter into procurement contracts for goods and services necessary to the Lottery's operation, as well as contracts with retailers to provide lottery tickets. The Lottery establishes its own rules regarding the payment of prizes, frequency of prize drawings, and sales of tickets (including ticket prices). The Lottery may sue and be sued in its own name, and has investigative powers

---

[2] Any deferred prize money in the administrative trust fund may be invested by the treasurer of state in annuities, in accordance with the procedure detailed in Ind. Code § 4-30-15-2. If an annuity is purchased to cover payment of a prize, the Lottery administers the annuity and may assign it to the prize winner. Id.

(such as issuing subpoenas and compelling evidence) for purposes of conducting such proceedings. Ind. Code §§ 4-30-3-1, -2, -6, -7, -8, -10, -11, -12, -16, -17.

The Lottery is subject to annual audits by the Budget Agency and State Board of Accounts (Ind. Code §§ 4-30-19-1, -2) and is statutorily required to submit a monthly revenue and expenditure report to the Budget Agency and each member of the Budget Committee; it must also comply with any Budget Committee request for a more detailed budget. Ind. Code § 4-30-19-4.2. The Lottery is required to submit monthly and annual reports to the governor disclosing total lottery revenues, prize disbursements, and other expenses, and describing the organizational structure of the Lottery Commission and its divisions. Ind. Code § 4-30-3-3. As Plaintiffs point out, however, the statutes governing the Lottery do not require the Lottery to submit its budget to the legislature for approval. Pls.' Resp. at 5.

Based on these considerations, it is clear to us that the Lottery has almost complete financial autonomy. It is entirely self-reliant with respect to how its day-to-day business is conducted; it receives no state funding for operations whatsoever and controls its own fiscal affairs with very little interference from the state. Compare DeHarder, 909 F. Supp. 606 (holding that the Indiana Housing Finance Authority was not entitled to invoke sovereign immunity when it had similar operational independence under the Indiana statutory scheme).[3] Though its revenues are entirely apportioned to Indiana's coffers

---

[3] In DeHarder, we held that Indiana's "narrow" oversight of the IHFA – specifically, that the entity was accountable to the State Board of Accounts, and was statutorily required to submit
(continued...)

under the governing statutory scheme, the Lottery has absolute control over the generation of such revenues through its operations and self-management of its administrative trust fund.

Crucial to this analysis is the fact that a monetary judgment against the Lottery would not directly implicate the treasury of the state of Indiana. Though such a judgment might have some secondary effect on state coffers (in that a judgment against the Lottery might reduce, to some extent, the available revenue from which the Lottery makes contributions to various funds – much as a monetary judgment against a private company would concomitantly reduce the state's tax base), any judgment assessed against the Lottery is collectible against the Lottery alone. In constructing the Lottery's statutory scheme as it has, the state of Indiana evinced its certain intent to insulate itself from any

---

[3](...continued)
annual reports of its activities to the governor and General Assembly – were insufficient to override numerous indicia of financial autonomy, particularly the fact that the Authority was not required to submit its budget to the legislature for approval. We note here, as we did in DeHarder, that such "oversight . . . consists of little more than making the authority subject to a uniform system of accounting that is prescribed for use by every public office, including municipalities and other political subdivisions not entitled to eleventh amendment immunity." 909 F. Supp. at 612.

We note further that the Lottery – like the IHFA in our DeHarder analysis – undeniably exhibits *some* attributes of a state agency. For example, its members are appointed by the governor, which may operate as a "check" on its decision-making power, as the Seventh Circuit pointed out in Kashani (813 F.2d at 847); also, the provisions of Indiana's Administrative Orders and Procedures Act ("AOPA") apply to the Lottery's decision-making process. Ind. Code § 4-30-7-1. However, as we noted in DeHarder, the entity "retains significant financial and operational autonomy[, and has] no recourse to state coffers. It was purposefully organized to have independent legal status under Indiana law." 909 F. Supp. at 613. In our judgment, these considerations override such relatively minor indicia of state control, and bar the Lottery from asserting immunity here.

liabilities the Lottery may incur.[4]

The Lottery is uniquely positioned as an independent entity whose sole purpose is the generation of revenue for the state of Indiana; indeed, Indiana courts have, in other contexts, recognized the significance of the Lottery's contributions to the public welfare. See, e.g., Foreman v. State, 865 N.E.2d 652, 659 (Ind. Ct. App. Apr. 30, 2007) ("[A]ll Indiana citizens may reap a potential benefit from the revenue generating function served by state operated and regulated [lottery] activities.") (quoting American Legion Post No. 113 v. State, 656 N.E.2d 1190, 1194 (Ind. Ct. App. 1995)). However, to confuse the Lottery's potential financial *impact* with its financial *autonomy* is to miscast our analysis here. Undisputedly, the Lottery exercises undivided control over its own financial operations, and has no recourse to the state for any additional budgetary appropriation. Contra Peirick, 2007 WL 4355360, at *13 (holding that the Board of Trustees of Indiana University was entitled to invoke sovereign immunity in view of its "depend[ence] on the [state for] financial support. . . . Since that financial support is carefully allocated, a judgment against the Board would 'affect the state treasury.'").

Moreover, we cannot discount the explicit statutory directive of the Indiana

---

[4] We relied upon similar circumstances in our ruling in DeHarder that the IHFA was not a state agency for purposes of immunity analysis. See 909 F. Supp. at 612. We note also the official opinion of the Indiana Attorney General which holds: "The State Lottery Commission is not a State Agency. . . . The State is not obligated or liable in case of default of the State Lottery Commission[.]" Official Opinion No. 91-10, Office of the Attorney General of the State of Indiana, at *3-*5, 1991 Ind. AG LEXIS 10 (Apr. 19, 1991). Though this opinion has no binding precedential effect on this court, it reinforces the conclusion regarding the intent for financial autonomy which is clearly evinced in the statutory scheme.

General Assembly that the Lottery be treated as a "self-supporting" entity "separate from the state" which "should function as much as possible as an entrepreneurial business enterprise." Ind. Code § 4-30-1-2. Though courts are cautioned against resolving questions of immunity solely "by simple reference to Indiana statutory definitions," (Kashani, 813 F.2d at 847), it is clear that, for the reasons we have discussed above, this legislative intention is made manifest in the substance of the Lottery's operations as well. See also DeHarder, 909 F. Supp. at 612 (describing a line of cases – involving such entities as the Indiana Port Commission, Indiana State Toll-Bridge Commission, and Indiana State Office Building Commission – in which courts have construed similar statutory language to create independent legal entities not considered "arms of the state"). Therefore, it is clear that the Lottery's general legal status as a self-sufficient independent entity supports our holding that it is not entitled to invoke sovereign immunity in response to this § 1981 action.[5]

---

[5] We further note that, in Nobles v. Cartwright, 659 N.E.2d 1064 (Ind. Ct. App. 1995) – a case which arose from the dismissal of a Lottery employee after she charged her supervisor with sexual harassment – the Indiana Court of Appeals noted that Indiana Code § 4-15-10, which provides remedies for state employees whose rights are violated by a state agency, could not provide relief to the dismissed employee because the Lottery was not an "agency." The court cited the statutory language creating the Lottery as a "body politic and corporate separate from the state," and further noted that Lottery employees are neither state merit system employees under Indiana Code § 4-15-2, nor employees of the state of Indiana under the Indiana Administrative Code. Id. at 1072.

Though the Lottery argues that Nobles "does not contribute meaningfully to the resolution of the question" (Def.'s Mem. at 16) because it was not specifically rendered in the sovereign immunity context, we cannot reasonably reconcile the inconsistency that would result were we to hold that the Lottery is immune from suit as a state agency. Such an incompatible result would effectively and unjustly foreclose recourse for Lottery employees whose rights arguably were violated by their employer.

### III. Conclusion

For the reasons we have stated, we hold that the Lottery is not a state agency for purposes of the Eleventh Amendment, and is therefore not immune from suit under Section 1981. Accordingly, the Lottery's Motion to Dismiss is <u>DENIED</u>. IT IS SO ORDERED.

Date: __01/07/2008_____

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Daniel C. Emerson
BOSE MCKINNEY & EVANS, LLP
demerson@boselaw.com

Kimberly Denise Jeselskis
MACEY SWANSON AND ALLMAN
kjeselskis@maceylaw.com

Barry A. Macey
MACEY SWANSON AND ALLMAN
bmacey@maceylaw.com

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP
amcneil@boselaw.com

Ralph Winston Staples Jr.
ralph.staples@gmail.com